Filed 8/27/14  Walker v. Signature Group Holdings CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KYLE WALKER, | B246926 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC112970) |
| v. | |
| SIGNATURE GROUP HOLDINGS, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Cesar A. Sarmiento, Judge.  Reversed with directions.

—————

Ervin Cohen & Jessup, Michael C. Lieb, and Leemore L. Kushner for Defendant and Appellant.

Daniels, Fine, Israel, Schonbuch & Lebovits, Moses Lebovits, and Anna Lisa Knafo For Plaintiff and Respondent.

—————

Signature Group Holdings, Inc. (Signature) appeals from an order granting Kyle Walker's motion for new trial after the superior court granted summary judgment in favor of Signature on Walker's cause of action for breach of contract. We conclude that because of the preclusive effect of an order entered in a parallel bankruptcy proceeding while this appeal was pending, we must reverse the superior court's order granting the motion for new trial.

## BACKGROUND

From early 2006 until the termination of his employment in 2007, Walker was the president and chief executive officer of Fremont Investment & Loan (FIL). FIL was a depository institution insured by the Federal Deposit Insurance Corporation (FDIC). FIL was a wholly owned subsidiary of Fremont General Credit Corporation (FGCC), which was a wholly owned subsidiary of Fremont General Corporation (FGC). Signature is the successor to FGC, FGCC, and FIL.

Walker, FGC, and FIL were parties to a "Management Continuity Agreement" (MCA), which provided that Walker was to receive certain severance benefits if his "employment with the Company [defined as FIL and FGC collectively] terminates within the thirty-six (36) month period following a Company Event." The MCA defined the term "Company Event" as including the acquisition or control, by a previously unaffiliated third party, of more than 50 percent "of the voting securities or assets of FIL." Also, if FIL or FGC terminated Walker's employment for any reason other than disability, the MCA defined the "Termination Date" as "the date on which a notice of termination is given."

On February 26, 2007, the FDIC notified FIL that the FDIC considered FIL to be a "troubled institution." On March 7, 2007, FGC and FIL stipulated to the FDIC's issuance of a "cease and desist" order against FIL and its "institution-affiliated parties," prohibiting them from engaging in certain "unsafe and unsound banking practices and violations of law."

On June 29, 2007, Walker received written notice of termination of his employment with FIL.

2

On July 2, 2007, a sale of a substantial portion of FIL's assets, which the parties refer to as the "iStar transaction," closed. Walker contends that the iStar transaction constituted a Company Event within the meaning of the MCA.

In June 2008, FGC filed a voluntary petition in bankruptcy. In July 2008, FIL surrendered its banking license, terminated its deposit insurance with the FDIC, and amended its articles of incorporation to become a general corporation not engaged in the banking business.

On August 28, 2008, Walker filed a proof of claim for $2,515,474.01 in the FGC bankruptcy proceeding. He alleged breach of contract as the basis for the claim.

On June 10, 2011, Walker filed suit in the superior court against FGC, FIL, and Signature, alleging claims for breach of contract, breach of fiduciary duty, and violations of the Labor Code. Signature (the successor to both FGC and FIL) demurred to the fiduciary duty and Labor Code claims, and Walker abandoned them, electing to proceed on the breach of contract claim alone. He alleged that defendants breached the MCA by failing to pay him severance benefits to which he was entitled, because he allegedly was terminated within 36 months after a Company Event, namely, the iStar transaction.

In December 2011, Signature moved to disallow Walker's claim in the FGC bankruptcy proceeding. Signature argued that no Company Event took place before Walker was terminated, so he had no contractual entitlement to severance benefits under the MCA. Signature also argued that assuming for the sake of argument that Walker was entitled to severance benefits under the MCA, the troubled condition of FIL at the time of Walker's termination rendered the relevant provisions of the MCA unenforceable, because the severance payments would constitute an illegal "golden parachute" under federal law.

Back in the superior court, Signature answered in December 2011and, six months later, moved for summary judgment on Walker's sole remaining claim for breach of contract. In support of the summary judgment motion, Signature argued that the iStar transaction was not a Company Event, that the iStar transaction followed rather than

3

preceded Walker's termination, and that the claimed severance benefits were an unlawful golden parachute even if Walker was contractually entitled to them.

On September 19, 2012, the superior court granted Signature's summary judgment motion. The court agreed that, assuming for the sake of argument that Walker was contractually entitled to severance benefits under the MCA, such payments would constitute an unlawful golden parachute. The court did not address Signature's other arguments.

On October 26, 2012, the superior court entered judgment in favor of Signature. On November 20, 2012, Walker moved for a new trial on the basis of *Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726 (*Faigin*), which had been decided earlier that month. Walker contended that under *Faigin*, the severance payments he sought to recover did not constitute an unlawful golden parachute.

On January 8, 2013, the superior court granted Walker's motion for new trial. The court agreed that *Faigin* undermined the legal basis for the court's summary judgment ruling. The court did not evaluate the merits of Signature's other grounds for summary judgment (namely, that no Company Event preceded Walker's termination), but the court expressed willingness to receive further briefing and evidence and to conduct an additional hearing concerning those grounds. The docket reflects that nothing came of the court's invitation, and on February 5, 2013, Signature filed the instant appeal from the order granting Walker's new trial motion.

While this appeal was pending, on January 21-24, 2014, the bankruptcy court conducted an evidentiary hearing on Signature's motion to disallow Walker's claim. On March 14, 2014, the court orally announced its ruling, granting Signature's motion and disallowing Walker's claim. On March 26, 2014, the court entered a signed order to the same effect. After a detailed consideration of the relevant documents and other evidence, the court determined that the iStar transaction did constitute a Company Event within the meaning of the MCA but that it took place after Walker was terminated, so he was not entitled to severance benefits.

4

The bankruptcy court docket reflects that Walker moved for reconsideration, but his motion was denied. The bankruptcy court docket also reflects that Walker then appealed the bankruptcy court's order to the federal district court. As far as we can determine, that appeal is still pending.

DISCUSSION

Signature argues that the preclusive effect of the bankruptcy court order disallowing Walker's claim requires reversal of the superior court's order granting Walker's motion for new trial. We agree.

"A federal judgment 'has the same effect in the courts of this state as it would have in a federal court.' [Citation.]" (*Younger v. Jensen* (1980) 26 Cal. 3d 397, 411.) "The federal rule is that a judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition." (*Levy v. Cohen* (1977) 19 Cal.3d 165, 172.) We must therefore treat the bankruptcy court's order as final for purposes of res judicata, even though an appeal from that order is presently pending.

"The doctrine of res judicata precludes parties or their privies from relitigating an issue that has been finally determined by a court of competent jurisdiction. [Citation.] 'Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action.' [Citation.] The application of the doctrine in a given case depends upon an affirmative answer to these three questions: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party to or in privity with a party to the prior adjudication?" (*Levy v. Cohen*, *supra*, 19 Cal.3d at p. 171.)

The issue decided by the bankruptcy court is identical to one of the issues presented in the present action. The bankruptcy court considered and agreed with Signature's argument that the iStar transaction took place after Walker's termination; Signature raised that argument in support of summary judgment in the superior court and

5

in support of disallowance of Walker's claim in the bankruptcy court. The bankruptcy court's order finally adjudicates that issue on the merits. And the party against whom the preclusive effect of the bankruptcy court's order is to operate was a party to the prior adjudication—Walker filed the claim in the bankruptcy proceeding and opposed Signature's motion, which was adjudicated at a four-day evidentiary hearing.

The bankruptcy court's order provides an independent alternative basis for the judgment entered in favor of Signature in the superior court. Accordingly, because all of the requirements for application of collateral estoppel are met, we must give preclusive effect to the bankruptcy court's order and reverse the superior court's order granting Walker's motion for new trial.

Walker's arguments to the contrary are not persuasive. First, Walker argues that when Signature appealed from the superior court's order rather than accepting the court's invitation for an additional hearing and further briefing and evidentiary submissions concerning Walker's termination date and the date of the iStar transaction, Signature's conduct constituted "a waiver of this issue in this appeal." We are not persuaded. When Signature filed its notice of appeal, the bankruptcy court had not yet ruled on the motion to disallow Walker's claim. Indeed, the four-day evidentiary hearing on that motion had not even begun. It was therefore impossible for Signature to bring the preclusive effect of the bankruptcy court's order to the attention of the superior court, because the bankruptcy court's order did not yet exist. But now that the bankruptcy court has entered its order, Signature is free to argue that the preclusive effect of that order provides a dispositive alternative ground for the superior court's judgment in favor of Signature and therefore requires reversal of the superior court's order granting a new trial.

Second, Walker argues that Signature is improperly asking this court to make "findings of fact with respect to Walker's termination date and the date of the 'Company Event.'" We disagree. Signature is not seeking findings of fact from this court concerning those dates, and we are making none. We are determining only the preclusive effect of the bankruptcy court's order, which is dispositive of the present appeal.

6

Third, Walker argues that the bankruptcy court's order is not final because it may yet be reversed or modified on appeal. We disagree. As we have already stated, the bankruptcy court's order has the same preclusive effect in California courts that it would have in federal courts, and in federal court it is final for purposes of res judicata when entered, even though it may later be reversed or modified.

Fourth, Walker argues that the bankruptcy court's order cannot be given preclusive effect because "the parties are not the same." (Underlining omitted.) We disagree. Collateral estoppel applies as long as the party sought to be precluded is the same as or in privity with a party to the prior adjudication. Walker is the party to be precluded, and he was a party to the bankruptcy proceeding, where he fully litigated the issues of his termination date and the date of the iStar transaction.[1]

For all of the foregoing reasons, we conclude that the bankruptcy court's order granting Signature's motion to disallow Walker's claim requires us to reverse the superior court's order granting Walker's motion for new trial. Our resolution of that issue makes it unnecessary for us to address the other arguments raised by the parties.

---

[1]    We also note that, apart from Walker, the parties are all but identical. The parties to the MCA are Walker, FIL, and FGC. The superior court litigation consists of a single cause of action for breach of the MCA. Walker named both FIL and FGC as defendants. Signature is the successor to both FIL and FGC, and Walker named Signature as a defendant. FGC is the petitioner in the bankruptcy action, which is being litigated by Signature as FGC's successor.

7

DISPOSITION

The order granting Walker's motion for new trial is reversed, and the superior court is directed to enter a new and different order denying the motion. Appellant shall recover its costs of appeal.

NOT TO BE PUBLISHED.


                                                    ROTHSCHILD, P. J.

We concur:



          JOHNSON, J.



          MILLER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.